appearing on behalf of COMEDY CLUB being in Al Copeland Investments, the appellant herein. And I understand I have an uphill battle, because I understand that arbitration is the darling of the circuit. So I'll try and keep my arguments brief and not reiterate. What essentially we have here, Your Honors, is an arbitration award that's lengthy, that purports to be very well-reasoned, that sets forth the basis for its conclusions. And there are several aspects of it that we believe are inappropriate in that the arbitrator exceeded his jurisdiction in entering those aspects of the award. Specifically, what I'm referring to is paragraphs 5, 6, and 7 of the award. Specifically, I'll sort of break them down. Paragraphs 6 and 7 of the award exceed his jurisdiction because on the face of the arbitration agreement itself, it provides that exclusive jurisdiction rests with the courts for purposes of obtaining any equitable remedies. Paragraphs 6 and 7 specifically issue permanent injunctions, which under, you know, it's we didn't brief it and nobody opposed the fact that this was, in fact, an equitable remedy, but under the current Supreme Court's eBay case, I think it's fairly definitive that it is, in fact, an equitable remedy. And therefore, pursuant to this Circuit precedent, it exceeded the arbitrator's authorities. It also went on to state in paragraphs 6 and 7 something that ties into our other argument, which is not just an issue of jurisdictional authority as to who has the jurisdictional authority to issue injunctive relief. It also went on and issued the injunctions with respect to not just the actual contracting parties, the ones that actually contracted and agreed to arbitration, the ones that actually submitted to the arbitration process, but also all affiliates. And the arbitrator specifically in his award incorporated the definition of the term affiliates as it set forth in the agreement, which is about as broad as anything I've ever seen. It goes on to include family members, anyone who is bloodline-related to any family. Breyer. Be careful when you argue about anything you've ever seen. I'm in my short time. Your youth creates a problem for you. I apologize. In my limited time. It is excessively broad. And if looked at the face of the actual agreement, the only portions that sort of implicate affiliates at all are ones where the actual parties say that they will affirm or make efforts to ensure that, under certain conditions, they will try to keep their affiliates in line. There is nothing in the agreement that binds the affiliates. There's the assigns portion, which says that this is binding on, you know, assigns, heirs and assigns, but it doesn't say anything about affiliates. So the arbitrator just sort of, I guess, went off and became creative, which I understand is the purview of an arbitrator in general, but in this particular case, by not only issuing permanent injunctions which were already outside the scope of his authority, but also by issuing them with respect to affiliates who are not parties, who had no We posit that, in that particular case, those two paragraphs are invalid as being in excess of the arbitrator's authority. And so what do you want us to do? I'd like you to strike them. The rest of the award, other than paragraph 5, can stand as is, you know, for a variety of reasons, whether we agree with it or not. You know, we concede that under the current authority, we can't really appeal it. And we're looking at it. You're talking to strike just the affiliates, or strike 6 and 7? Strike 6 and 7, for both reasons, both because the affiliates are mentioned, but also because they're permanent injunctions that are outside of the arbitrator's authority. Counsel, I have a question for you. Certainly, Your Honor. Assuming we reject the argument that the arbitrator could join the thing, I still have some concern about the scope of the non-compete injunction. And I have a factual question first. I couldn't understand from the excerpts. That is, where are the eight clubs that Comedy Club opened? I think there are eight improv clubs. Where are they geographically? Because I have some concern whether the reasonable, the non-compete has to have a geographic component that's other than nationwide. So are they in cities? Yeah, are the clubs all in different cities? They are in several. There are seven, actually. And they're in several cities within, I believe, two or three states. And your question actually leads me into what my next point was, which is directly to address this issue with respect to the two or three states. Why don't you tell us what the two or three states are? There's California, and I don't want to get caught in a lie, but I believe it's Louisiana and Texas, but I could be wrong. And so I don't want to misrepresent anything to the Court. I confess I didn't specifically look at this after a year and a half, the states themselves. Okay. Would it be permissible for the court under the law as it relates to arbitration to vacate in part and to remand to the district court to hold an evidentiary hearing and to make a determination of what scope of a non-compete is at least geography? I believe it would be permissible, but I don't know that it ever needs to get to that. I think there could be a preservation of judicial resources if the award is simply the portions of the award that are problematic or stricken, there would be no need to actually remand the case back to the district court. With respect to the sections that exceed the scope where the arbitrator went on and actually issued the permanent injunction nationwide, there are a variety of reasons for why that exceeds the scope and is also in violation of California 16600 and is a public policy consideration here. First of all, when you look at the arbitrator's award itself on its face, in paragraph – I'd like to have it in front of me so I don't misrepresent anything – in paragraph 5, for example, where it incorporates section 9J, it goes on to say, Section 9J of the agreement is a valid and enforceable interim covenant not to compete, shall remain valid and enforceable within the United States. For example, that already exceeds his authority, because if you look at the definition of the territory in the underlying actual licensing agreement, the territory is, first of all, limited to its specifically defined term, which says it's limited to where licenses are granted. And second of all, the magnitude, the absolute maximum that it could be, is the 48 contiguous United States. And that's on the face of the agreement. It's sort of surprising and inconceivable how the arbitrator believed that he could expand it to even beyond that and say within the United States, because the last time I checked, it was still 50 states. So even that alone exceeds it on two bases, that he said that – well, it's as I reiterated. With respect to paragraph 6 and 7, they take it even one step further. They don't just – and I think paragraphs 5 of the arbitrator's award could actually be stricken just the last portion of it. If the Court were inclined to say that 9J on its face is actually valid and enforceable, that could conceivably work, because as Your Honor pointed out, it could work under the limited circumstances of the territory and the term as it's set forth in the actual agreement. The term on the face of the agreement is a – sorry – defined term. It's actually in the definition section, and the term is defined to be the term of the license. It is not the term of the agreement. There are portions of the agreement that vary in duration, including some that actually go beyond this term or the duration of what the longest license could be, which is to year 2019. So the term is actually defined to be the term of the license. So it is conceivable that, for example, with respect to the existing clubs, the term would be, because they've already been licensed, the license exists with respect to them, that it could be that for those clubs, the term of any restrictive covenant not to compete would be until 2019. But the arbitrator on the face of the award specifically said that he has canceled any other future licenses, that appellants are not entitled to any other licenses. So therefore, with respect to any other territories, anything other than what already exists, there can be no term because there can be no term of the license. There's no longer a license. Is the geographic territory the state where the clubs are, or is it the county, you know, where they're situated? I hadn't considered that, but I suppose that would be an issue that would be remanded to the district court to determine the reasonableness of those parameters. Is there a problem with timeliness of your appeal? I don't believe so, because we're appealing from the actual terms of the arbitration award itself. I understand, my understanding is that the court's concerned about the underlying order itself sending the parties to arbitration, and that was briefed in the opposing brief. And as much as I don't like it, I'm willing to concede that issue and not really take up the court's time arguing whether or not we should have been sent to arbitration in the first place. But with respect to the actual issuance of the award, the appeal from that was timely, and I don't believe there was any mention of the fact that it wasn't in the opposing briefs. I'd be happy to rest and reserve time for rebuttal.  Thank you, Your Honor. May it please the Court, Robert Klieger on behalf of the appellees. Let me start with the last issue raised, which is the timeliness of the appeal. That absolutely is an issue that's raised in the appellee's brief. It's the first and foremost issue with respect to the arbitration issue. Judge Byrne made a specific ruling in respect to the motion to compel arbitration that equitable issues and claims for equitable relief were arbitrable. That was the specific argument that was presented to the Court and the specific issue that was ruled on. It was after the arbitration award was entered that the appellants came back to Judge Byrne's original order, dismissing the case and sending it to arbitration. And the appeal from that brought 287 days after the order, sending the case to arbitration,    are arbitrable. And the court simply does not have jurisdiction to consider the arbitrability of those claims as a result. With respect to the Section 9J issue, we're dealing here with a case that is unlike the vast majority of cases that come before courts dealing with Section 16600, in that we're dealing with a covenant against competition within the term of an existing agreement. This would be the same as an employer. Counsel, even if the interim enforcement is reasonable temporally, there's still a geographic issue of whether the covenant is reasonable because of its geographic scope. So at least it seems to me that that would be pertinent under 16660. Now, your client has some other licensees, right? Correct. And yet they have covenants not to compete. And what's the geographic scope of their covenants not to compete? I cannot represent with respect to each and every licensee what that is. But I believe it would be the same, exactly the same as here, which is as long as they're operating as a franchisee of Improv, they shall not operate any other comedy club. I thought that those other agreements, I'll check the record again. I was under the impression that they restricted opening a club in the county where the club was located. It's actually the restrictions that I believe reflected in the record, but I would go back and check this as well, are restrictions on clubs that my client, Improv West Associates, can license within a specific vicinity of that licensee's club. So for example, if a licensee has a club in Hollywood, California, it would say that Improv West Associates cannot license another club in Los Angeles County. But you would say that your Improv licensee in Hollywood, California, has to covenant not to compete anywhere in the US? Well, yes, and particularly here because that licensee happens to be the appellant. So we're dealing with a specific agreement at issue. But what I was asking is with regard to all of your other licensees, is it your, are you telling me that the agreements restrict their competition nationwide? And I can't make a representation with respect to each and every one, and the record on that is what it is. But I believe that that is the case, that the purpose of those is to provide that if you're operating as an Improv licensee, that you'll devote all of your efforts in terms of developing a comedy club business to Improv rather than having your time and your efforts split between Improv and other franchises or other clubs, whether it's in the same city, the same county, the same state or elsewhere. Because the intent is that when you're operating as a franchisee of a particular business, all of your time and efforts, if you contractually agree to it, should be devoted to that business. And there's no case in California State Court, in the Ninth Circuit, or any district court in the Ninth Circuit, or in any state in the country, interpreting section 16600, that has said that a covenant not to compete in term, in a franchise agreement, in a distribution agreement, an employment agreement, is subject to any sort of reasonableness inquiry with respect to time, with respect to geography, or with respect to anything else. That within the term of the agreement, the franchisee necessarily is able to engage in their trade business or profession because they're operating the franchise. And under the Ninth Circuit's authority in Campbell and in general packaging, the general commercial packaging, the fact that the franchisee is not completely excluded from engaging in a trade or profession is the beginning and the end of the inquiry. And in fact, the great frame up case from the Northern District of Illinois, which was a case in which the franchisee operated a single picture framing store. And the contract said that so long as they operated that picture framing store as a franchisee, they would not have an interest in any other picture framing store, period. Indirect, directly, indirectly, they simply would not own an interest in another picture framing store. The court there said under 16600, that would not be unenforceable. And the Ninth Circuit in the general commercial packaging case cited that great frame up case from the Northern District of Illinois, not for the specific franchise proposition, but for the proposition that if the individual who is subject to the covenant not to compete is not completely precluded from engaging in a trade or profession, then the covenant is enforceable. So they specifically approved of the very reasoning that the Illinois court, the Northern District of Illinois, applied in holding that there was no reasonableness inquiry in evaluating a covenant not to compete in a franchise agreement, that it simply was enforceable. It would dramatically create new law, not just for the Ninth Circuit. It would go against Ninth Circuit authority, but for California generally to hold that any sort of interim covenant is subject to any sort of scrutiny under 16600, so long as it does not outlive the term of the agreement, which the covenant in this case does not. And then the last issue that I'll touch on is the issue with respect to the scope of who is enjoined. The agreement in this case. I think this goes. Oh, I'm sorry. On your last point, if someone had a McDonald's franchise in Hollywood, California, and then McDonald's, in their franchise agreement, said their franchisee, let's say a California business individual, couldn't open a restaurant anywhere in the country. They couldn't have a hamburger stand in Maine or Florida. Are you saying that would be okay under 16660? I am, Your Honor. And recognizing first, as a caveat at the beginning, that we are in this case dealing with a nationwide licensee who has improv clubs in Maryland, in Pennsylvania, in California. So we really are talking across the country. But even in the limited example that Your Honor has proposed, yes, because if a franchisor, a McDonald's in that example, wants to enter into a contract with someone that they want to ensure that for so long as they're a McDonald's franchisee, is going to be devoting their efforts to McDonald's and is not going to be engaging in other fast food businesses, is not going to be taking the information that they're learning, even if not trade secrets, they're not going to be taking the information they're learning from McDonald's about promotions, about the way the business is run, and using it for a competing business. And they're not going to be devoting time and resources that could be devoted to McDonald's in Hollywood, to their hamburger stand in Maine. It's perfectly permissible under 16600 for McDonald's to insist upon that restriction. Now, the individual entering into the franchise may decide for themselves, it's not worth it. We don't want to enter into a McDonald's franchise if we're not going to be able to operate a hamburger stand in Maine. But that's their decision. There's nothing in 16600 that would say that they're not entitled to enter into that agreement, and that the agreement's not going to be enforced if they do. Counselor, your position is that anything goes. Is that correct? Reasonableness has no bearing whatsoever in the 1660, or whatever it is. Only with respect to interim covenants. With respect to the interim covenants. Correct. With respect to post-term covenants. No. Interim is all you're arguing. That is correct. And the California Courts and the Ninth Circuit have been very clear that in no context is there a reasonableness inquiry under 16600. Ever? The ever. Ever. Question mark. Yes. Ever. Okay. Fine. That's Campbell. That's general commercial packaging. There's an IBM case more recently that interprets those and says, yes, as long as the person who's subject to the covenant is not completely precluded from engaging a trade, business, or profession, the covenant not to compete is enforceable. In a minute, somebody's going to be rebutting. What she has asked us to do was strike certain provisions. Your position, I assume, is that we should not, that the arbitration agreement should be affirmed as it is. That is correct. Why don't you tell her specifically why we should not strike what she's asked us to strike? Well, the three paragraphs that the appellant has requested be stricken, two of them she requests be stricken simply because they're equitable relief, because they're injunctive relief. Those should not be stricken for two reasons. One, there is no timely appeal, which is the issue I began with. So there simply is not jurisdiction to reconsider whether the arbitrator had authority over claims for equitable relief. The second reason is, even if the Court was to reach that issue, the district court here correctly went through the agreement in light of the strong Federal policy favoring arbitration and the presumption in favor of arbitration, and found that whatever ambiguity may exist in the agreement with respect to whether equitable claims could be heard in arbitration, as well as in Federal court or only in Federal or State court, the district court properly resolved that ambiguity in favor of arbitration. So because those claims are arbitrable, well, if they could even be considered here, they could probably be found to be arbitrable. Paragraphs 6 and 7 should stand. With respect to the covenant not to compete, paragraph 5, that should stand because under Ninth Circuit law, under California law, interpreting section 16600, and under the law, the other jurisdictions that have considered 16600, every case has held that this type of covenant not to compete is enforceable without any reasonableness inquiry. And then finally, there was one portion of one of the paragraphs that the appellants have requested be stricken, which is the provision with respect to binding affiliates. In a case that was issued for the first instance in Federal court as opposed to one adopted from the arbitrator here, clearly an injunction does not bar activity simply by the named party to a contract, but it extends to their agents, their employees, their officers, their directors, and anyone acting in concert. The affiliates provision here seems to go way beyond, you know, agents, employees kinds of language. It's broader than that. It would cover somebody's grandmother, right? The provision here, agreed, is broader than agents and employees, and it does it would encompass relatives of certain of the officers or directors. The genesis of that provision in the order is that Section 9J in the agreement specifically provides that neither the named licensee nor their affiliates shall engage in competition, and the named licensees state that they will take steps to ensure that their affiliates do not. In this case, where the arbitrator's order provides that, exactly what the agreement provides, that their affiliates should not engage in conduct which the licensee cannot, it's simply a matter of providing notice of the order to those individuals, and it is perfectly consistent with law to the extent that they do not follow that order and act in concert with the named licensee in operating a competing, in this case, comedy venture, that that would be a violation of an injunction. Does it say in concert? Or are they just prohibited from doing it? The way it is written, the way it is written in the arbitrator's order, its Respondents and their affiliates are enjoined. That's right. So their affiliates are enjoined, and you say, well, we give them notice and that's enough. When do they get a chance to come in and fight it? Well, there When you call them in on a contempt, is that what you're going to do? Well, that would be their opportunity to fight it unless upon receiving notice they wanted to bring a challenge. But the licensee in this case You never served them, you never did anything, but you're going to bind them in that way? How can you do that? No, I'm saying if they are served with a copy of the injunction. That's enough? In this case, we're the In this case, nuts. I'm talking about generally. Is it ever, you know, you don't have to serve them, you don't have to give them an opportunity to be heard, and you can bind them this way? I don't think so. Generally, no. But the reason I'm focusing specifically on this case is this is a case in which the licensee Answer my question, please, first. Generally, no. Good. This is a case Do you say this is an exception? This is a case in which the licensee has specifically covenanted as part of the agreement The licensee doesn't have the right to bind someone just because they're related. Isn't that true? Correct. But in the agreement, they represent that they do. In other words, whether No. It just said that in concert, they're not going to do it, right? I'm not I don't have an agreement in front of me from what you said. It specifically says that the licensee shall not compete and they shall ensure that their affiliates do not compete. And they specifically represent it and warrant it that they have the authority to make all the promises they made. If that's the case, then the injunction should have been tailored to that situation. But you're not saying that it is. You're saying that these people who were never served, never got anything, could be bound by this. And I have a great deal of difficulty saying that. In an instance where you have a contract that upon entering into the contract, the licensee represented and warranted that neither they nor their affiliates would engage in this. Affiliates generally at that point meaning somebody who is affiliated in business with them. Is that correct? No, because affiliates is a defined term in the agreement. You're talking about general law, and I'm saying that generally it talks about somebody that's in business with them, an affiliate. Subsidiaries are affiliates and so on and so forth, and the mother company is an affiliate. That's the general term, affiliate. Now, you're saying, oh, well, we defined it this time to include second cousins. So, therefore, the second cousins can be bound even though they don't get a chance to commit the court. I'm not going to buy that. There is a lower case A affiliate, which I agree, generally speaking, subsidiaries, parent companies, sister companies, and there's a capital A affiliate. And the agreement here specifically uses the defined term capital A affiliate. And the licensee later on was an affiliate. The affiliates, these capital A affiliates, the cousins or grandparents, they weren't parties to the arbitration. They weren't parties to the district court proceeding. So, I mean, I understand how you can get an order against a comedy club, but how can you enforce an arbitral award against people who weren't part of the legal proceeding? Well, that's something that, just to state a point, not to repeat myself, but clearly with respect to all cases in Federal court, there are certain people who are not parties to the proceeding that are bound by an injunction in the proceeding. Yeah. If they're agents, if they're agents, you know, Rule 65 spells out certain people who are going to be bound, but in general, they're people or agents of the person who's enjoined. Or persons acting in concert therewith. And if the court were to find that affiliates should not be bound, notwithstanding the fact that they're spelled out as being bound by the non-competing agreement, that affiliates should not be bound, then the solution would be not to strike affiliates, but either for this court to hold or to send back to the district court to modify the order so that it would be affiliates, it could be agents, employees, officers, directors, and affiliates acting in concert with any of the foregoing. But clearly, there can be no question that if an affiliate or anybody else that's even not an affiliate is acting in concert with the licensee. Kennedy, is basically that we say we'll go, that we would find, that we would go along with what the law presently provides and not what the arbitration says, the arbitrable award. If the determination is made that the arbitral award is overbroad in that respect, yes, that is to the extent. Then why don't we just strike it? It can't be simply, it cannot be simply striking affiliates to the extent they're acting in concert therewith. That's why I'm suggesting that striking it would take the award well below their permissible bounds. If the arbitrator is found to have gone beyond the permissible bounds, it should be only stricken to the extent to bring it within the permissible bounds, which would be to limit it to agents, officers, directors, employees, or affiliates acting in concert with the licensee.  Thank you, Your Honor. Go ahead, Rebuttal. Thank you. I will sort of go backwards and pick up where we just left off. I'd like to posit that if parties could simply define affiliates and bind sort of non-knowing people who are defined as affiliates, I imagine everyone on this panel could be included in the definition, and one could say that affiliates include all judges on the Ninth Circuit panel, and therefore, everyone would be bound by the injunction if they were allowed to stand. And I would pose that I think we've already established that that's not the case. There is no authority for any – for that kind of a broad injunctive authority, especially resting with an arbitrator. And FRCP 65, which has been cited earlier and is cited in the opposing brief, is actually an exclusive listing of who can be bound by an injunction, not an inclusive, suggestive, open-ended listing. It says it's limited to. So if anything, it could only be what's set forth in Federal Rule 65 or less, but that's not what the agreement says. This would be completely rewriting both the agreement and the arbitrator's award, what opposing counsel is actually asking this Court to do. I would like to go back, to the extent that this is helpful to Your Honor, with respect to your earlier question about the status of other licensing agreements. They are included in the excerpt of record. They start on page 41 and go on through probably about 10, 20 pages after that. If Your Honor is so inclined to go through them, they are very, very broad in the duration of them. They are exceedingly limited in scope. Each one of them is limited to either a city or a county in which the restrictive covenant applies. None of them. But that was my impression, that the geographic area in which the licensees of IMPROV in these other cases weren't to compete was not nationwide, but was at most the county. That's exactly correct. You remembered it better than I did, but that's exactly correct. The other issue that I'd like to address is counsel's argument that the covenant here is enforceable because it is in term, and without even having to address the issue of whether or not there's a reasonableness component to 16-600, which I believe there is, but we don't even need to get to that. We don't have an in-term covenant not to compete. The term on the face of the agreement is the term of the license. Once the arbitrator cut off the license, the term with respect to any other jurisdictions is cut off. There's no license there anymore. So how can you say there's an in-term covenant to compete in, you know, I'm going to pick a state where there's no longer a license in New York. If there's no license there, there is no term. So it can't be an in-term covenant to compete. And finally, with respect to counsel's initial argument, I don't know if he didn't hear me, but I did concede on the issue of arbitrability. So I don't think we are fighting over whether or not the court should have sent this to the arbitration forum. The only thing that we are actually disputing is what the arbitrator did once the matter was sent to him, which is in these discrete matters, in the portions of the award that he issued, paragraphs 5, 6, and 7, he exceeded his authority. Thank you, counsel. Thank you. The case just argued is submitted. The Court will take a brief recess.
judges: Farris, Gould, Cff, Duffy